ADAM BRAVERMAN
United States Attorney
ERIK GANTZEL
Special Assistant U.S. Attorney
California Bar No. 167923
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8710
Email: Erik.Gantzel@usdoj.gov

Attorneys for the Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINA LATEEF YOUSIF KATW,<br>aka Lena Latif Yosef,<br><br>Defendant. | Case No.: 17CR3818-LAB<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |

The United States of America, by and through its counsel, United States Attorney, Adam Braverman, and Special Assistant U.S. Attorney, Erik Gantzel, hereby files its Response in Opposition to Defendant's Motion to Compel Discovery, Preserve Evidence, and Leave to File Further Motions.

## I.  STATEMENT OF THE CASE

Lina Lateef Yousif Katw (Defendant) is facing a prosecution under 8 U.S.C. § 1546. On October 17, 2017, Defendant was charged via complaint in the Southern District of California. On November 16, 2017, defendant waived indictment and was charged by

Information with False Statement in an Immigration Application. On November 21, 2017, Defendant filed a Motion to Compel Discovery.

## II. STATEMENT OF FACTS

On November 14, 2013, Defendant applied for admission into the United States from Mexico at the San Ysidro, California, Port of Entry, identifying herself as an Iraqi citizen under the alias "Lena Latif Yosef." A U.S. Customs and Border Protection Officer ("CBPO") referred Defendant to secondary immigration inspection because Defendant did not present any immigration or identification documents. Defendant claimed she feared returning to her country of origin, Iraq, and requested asylum in the United States.

The following day, November 15, 2013, Defendant provided a sworn statement to CBPOs at the San Ysidro Port of Entry. When asked whether she had ever held citizenship or sought asylum in another country, she stated that she had not. She stated that she had never used another name, and that she had no family members in the United States.

On April 8, 2014, Defendant filed a sworn asylum application with the U.S. Immigration Court. On this application, she stated that she had not used any name other than Lena Latif Yosef. She further stated that she fled Iraq on May 18, 2013, and traveled through Turkey, Greece and Mexico on her way to the United States. She stated that she had not sought or received lawful status in any other country prior to her November 14, 2013, arrival to the United States.

On January 7, 2015, Defendant appeared with an attorney before an Immigration Judge at the San Diego Immigration Court. The hearing was audio recorded. Defendant, assisted by a Chaldean interpreter, affirmed before the Immigration Judge, that the contents of her asylum application were true and correct. Defendant also testified that she left Iraq for the first time on May 18, 2013, and that she traveled to Turkey, where she obtained permission to remain for 30 days. She testified that she next traveled to Greece, where she stayed until November 13, 2013. On that date, Defendant testified, she flew from Greece to an airport in an unknown European country, where she remained for two

to three hours before continuing to Mexico City. Defendant testified that the person who arranged her flights gave her the passport and visa she used to fly from Greece to Mexico.

Following Defendant's entry into the United States, Homeland Security Investigation ("HSI") agents in San Diego reviewed passenger manifest records and discovered that Defendant had flown from Frankfurt, Germany to Cancun, Mexico on November 6, 2013, using a German passport. HSI agents subsequently requested that the HSI Attaché in Frankfurt, Germany, obtain additional information from German authorities regarding Defendant's true identity. The German authorities, on a "police-to-police" basis, provided a database printout from Defendant's German Passport Record, which included a photo of Defendant. HSI agents compared the photo provided by the German authorities to a photo of Defendant obtained at the San Ysidro Port of Entry and determined them to be the same individual, noting consistent facial features, including ears, nose, hairline and jawline. The German Passport Record reflected that Defendant was naturalized as a German citizen on November 11, 2011, and that her German passport was valid through November 10, 2021.

### III. DEFENDANT'S MOTION TO COMPEL DISCOVERY

To date, the United States has produced at least 144 pages of discovery and one CD, including Defendant's statements, immigration applications, investigative reports, and other materials. The investigation into the case is ongoing and, consequently, new discoverable material is continuously being obtained or generated. The United States will continue to provide additional discovery as it is identified or becomes available.

In her motion, Defendant sets forth 29 specific discovery requests. Many relate to "*Brady* Material" or information that would otherwise be helpful to the defense. The United States recognizes and acknowledges its obligation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The United States will continue to comply with its discovery obligations going forward.

As to exculpatory or impeachment information sought, the United States is aware of its obligations under *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972) and will comply with those obligations. The United States will also produce any evidence of bias/motive, impeachment or criminal investigation of any of its witnesses of which it becomes aware. An inquiry pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

The United States further responds and opposes several of Defendant's specific requests as outlined below:

In request (2), Defendant requests arrest reports, rough notes, and dispatch tapes. The United States does not deem agents' rough notes to be discoverable at this time but will take steps to preserve them as requested in Defendant's motion. The United States was informed that HSI does not have dispatch tapes for this case.

In request (7), Defendant requests proposed 404(b) evidence. The United States will provide any 404(b) evidence within 2 weeks of trial to the extent possible.

In request (9), Defendant requests the preservation of evidence. The United States has preserved all known evidence within its custody in this case. Therefore, a preservation order is not necessary. If there is specific evidence for which Defendant seeks preservation, she should specifically articulate the item(s) she would like preserved, so that the United States may act upon the request.

In request (10), Defendant seeks *Henthorn* material for each agent involved with Defendant's case. In *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991), the Ninth Circuit Court of Appeals held that, upon a defendant's request, the United States is required to review personnel files of law enforcement officials that the government intends to call as witnesses. Defendant's request overstates the United States' *Henthorn* obligations, and the United States opposes production of *Henthorn* material for non-testifying government witnesses. The United States also opposes Defendant's proposed deadline of one week before the motion hearing and two weeks before trial as the type of in-depth review

requested from the involved agencies may not always be completed on this timeline despite the best efforts of the United States Attorney's Office and agency counterparts.

In request (11), Defendant requests "an opportunity to inspect…all other documents and tangible objects." Defendant is welcome to inspect the items retained by the United States but, to date, has not made any attempts to schedule a viewing.

In request (12), Defendant requests three weeks' expert notice. The United States will make every effort to give three weeks' expert notice and **moves for the same amount of notice from Defendant as both sides should be entitled to ample time to properly prepare for and respond to expert testimony**.

In request (14), (15), (16), and (17), Defendant requests impeachment evidence, evidence of criminal investigations, and evidence of bias or motive to lie, evidence affecting perception/recollection/veracity/ability to communicate, and witness addresses for any "prospective government witness." Defendant is not entitled to those items for witnesses that the United States does not intend to call to the stand at trial under Ninth Circuit law. Therefore, the United States opposes production of the above-mentioned items for the government's non-testifying witnesses.

In request (17), Defendant "requests the name and last known address of each prospective government witness." The United States will provide a list of witness names in its trial memorandum. The grand jury transcript of any person who will testify at trial will also be produced. At this time, the United States only anticipates calling law enforcement witnesses. Their work addresses are publically available and will not be provided. Nor will their home addresses be provided absent a court order. The United States is more than happy to facilitate service of process for any law enforcement witness for whom Defendant wishes to serve with a trial subpoena.

In request (19), Defendant requests disclosure of "any statement relevant to any possible defense or contention that he might assert." The authority on which Defendant relies, *United States v. Bailleaux*, simply affirms the Government's disclosure obligations under Rule 16, with which the United States has and will continue to comply. Defendant's

request, however, overstates the United States' obligation under Rule 16 and should be denied and/or limited to that which is actually covered by Rule 16.

In requests (21), (22), and (23) Defendant requests discovery of agreements between the Government and Witnesses (and relevant *Giglio* discovery). There are no such agreements at this time. To the best of the prosecutors' knowledge at this time, no informants or cooperating witnesses were percipient witnesses or participated in the crime.

Defendant's request (25) for "Personnel Records of Government Officers Involved in the Arrest," exceeds the mandates of *Brady* and *Giglio* and should be denied. The only authority Defendant cites is *Pitchess v. Superior Court*, 11 Ca. 3d 531, 539 (1974), which does not bind this Court. Moreover, even in California state courts bound by *Pitchess*, personnel records are not automatically disclosed to Defendants based on generic two-sentence requests. Rather, there is a codified procedure. *See* Cal.Penal Code §§ 832.7, 832.8; Cal. Evid. Code §§1043-1045.

The *Pitchess* procedure involves two steps. First, the defendant must make a written motion for peace officer personnel records that describes the records sought and that is "supported by 'affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records.'" *California Highway Patrol v. Superior Court*, 84 Cal. App. 4th 1010, 1019-20, 101 Cal. Rptr. 2d 379 (2000) (quoting Cal. Evid. Code §1043). Second, if a showing of good cause is made, the trial court will conduct an *in camera* review of the records to determine whether they are relevant to the current proceedings. If the trial court concludes that the records are relevant, only then should Defendant be allowed access to them.

In sum, the United States has provided a substantial amount of discovery and will continue to make additional productions and disclosures on a rolling basis in compliance with its legal obligations. To the extent Defendant requests specific documents or types of documents, the United States will continue to disclose any and all discovery required by

the relevant discovery rules. The United States will also accommodate reasonable requests to inspect items upon a specific request for viewings at mutually agreeable times. To the extent that Defendant requests broad categories of law enforcement sensitive information without any showing of materiality, her requests should be denied. The United States requests that the Court issue rulings on the above-contested discovery requests at the next court date.

### IV. MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Finally, the United States does not oppose Defendant's motion for leave to file further motions so long as they are based on new discovery or legal issues arising from new discovery.

Similarly, the United States reserves the opportunity to file further motions based on new discovery or legal issues that arise.

### V. CONCLUSION

For the foregoing reasons, the United States requests that Defendant's motions be denied where opposed.

DATED: December 4, 2017                    Respectfully submitted,

                                           ADAM BRAVERMAN
                                           United States Attorney

                                           */s/ Erik Gantzel*
                                           ERIK GANTZEL
                                           Special Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINA LATEEF YOUSIF KATW,<br>aka Lena Latif Yosef,<br><br>Defendant. | Case No.: 17CR3818-LAB<br><br>CERTIFICATE OF SERVICE |

I, the undersigned, declare under penalty of perjury that I have served the foregoing document on the above-captioned party(ies) by:

- ■ electronically filing it with the U.S. District Court for the Southern District of California using its ECF System, which electronically notifies the party(ies).

- ☐ causing the foregoing to be mailed by first class mail to the parties identified with the District Court Clerk on the ECF System.

- ☐ causing the foregoing to be mailed by first class mail to the following non-ECF participant at the last known address, at which place there is delivery service of mail from the United States Postal Service:

Executed on December 4, 2017.

*/s/ Erik Gantzel*
ERIK GANTZEL
Special Assistant United States Attorney